IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RESERVOIR, INC., *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:12-2756 |
| § | |
| JUSTIN Z. TRUESDELL, *et al.*, § | |
| § | |
| Defendants. § | |

## **MEMORANDUM AND ORDER**

In this case alleging trademark infringement and other causes of action, Plaintiffs Reservoir, Inc., and Mohammad Ayman Jarrah ("Plaintiffs") have filed a Motion for Partial Summary Judgment and Injunction [Doc. # 30] ("Motion"). Plaintiffs' Motion seeks summary judgment as to the equitable defenses to trademark infringement asserted by Defendants Justin Z. Truesdell, Rainbow Cattle Co., Inc., Rebels Honky Tonk, LLC, and 26710 North I45 Limited Partnership ("Defendants"). Plaintiffs also filed a Supplement [Doc. # 32] to their Motion, which Defendants oppose. Defendants have filed a Response [Doc. # 33] to the Motion, and Plaintiffs have replied [Doc. # 34]. The Motion is ripe for decision. Having considered the parties' briefing and exhibits, the applicable legal authorities, and all matters of record, the Court concludes that the Motion should be **granted in part** and **denied in**

**part**.

I.  **BACKGROUND**

As set forth in the Court's previous Memorandum and Order [Doc. # 22], Plaintiffs own and operate an establishment on Washington Avenue in Houston, Texas, called Rebels Honky Tonk ("Rebels I"). Rebels I began operations in August 2009. Defendant Truesdell had a business relationship with Plaintiff Reservoir, but the relationship ended before Rebels I opened in August 2009. Truesdell claims that he personally developed the "Rebels Honky Tonk" name and concept during his partnership with Reservoir.

In September 2009, Truesdell formed Rebels Honky Tonk, LLC. In November 2009, he opened an establishment in Austin called Rebels Honky Tonk ("Rebels II"). On June 28, 2010, well after both the Houston and Austin establishments began operating, Truesdell filed an Application with the United States Patent and Trademark Office ("PTO") for a trademark using the words "Rebels Honky Tonk." The PTO granted the Application, and the mark was registered on April 4, 2011.

In January 2012, Truesdell formed 26710 North I45 Limited Partnership; shortly thereafter, in March 2012, Truesdell opened a Rebels Honky Tonk in Oak Ridge North, Texas ("Rebels III").

On February 28, 2012, Truesdell's counsel sent a "cease and desist" letter to

Plaintiffs claiming that Rebels I was infringing on his registered mark. On August 27, 2012, Plaintiffs filed this action in the 9th District Court of Montgomery County, Texas. In this suit, Plaintiffs claim trademark rights to the words "Rebels Honky Tonk"; the composite word and design mark featuring a cowboy hat with a star, longhorns, and a sign reading "Rebels Honky Tonk"; and the website *rebelshonkytonkhouston.com*.[1] Plaintiffs allege that Defendants are infringing upon their trademarks in violation of Section 43(a) of the Lanham Act.[2] Defendants removed the case to this Court on September 13, 2012. Notice of Removal [Doc. # 1].

On April 30, 2013, the Court granted in part Plaintiffs' motion for judgment on the pleadings as to Plaintiffs' claim for trademark infringement under Section 43(a) of the Lanham Act. Memorandum and Order [Doc. # 22]. The Court held that Plaintiffs had established both elements of a claim under Section 43(a): (1) ownership of a legally protectible mark, and (2) likelihood of confusion in the minds of potential

---

[1] *See* Exhibit C to Motion (depictions of logo and website screen shots).

[2] Plaintiff's claims, as amended on February 28, 2013, are: (1) common law trademark infringement; (2) common law unfair competition; (3) injury to business reputation and trademark dilution under Texas Business and Commerce Code § 16.29; (4) trademark infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (5) trade dress infringement under Section 43 of the Lanham Act. Plaintiffs seek cancellation of the Truesdell's registration of the trademark, among other remedies. First Amended Complaint [Doc. # 19] *passim*.

customers. On June 25, 2013, the Court clarified that Defendants' affirmative defenses to trademark infringement remained pending, and that judgment regarding Defendants' liability under Section 43(a) would not be entered until the affirmative defenses were resolved. Order [Doc. # 29].

Plaintiffs now move for partial summary judgment on Defendants' equitable defenses to Plaintiffs' claim under Section 43(a). Plaintiffs also seek injunctive relief. In support of their Motion, Plaintiffs have submitted an affidavit of Plaintiff Ayman Jarrah ("Jarrah Affidavit"), which states that Rebels I in Houston opened in August 2009, and that Jarrah did not know that Rebels II was operating in Austin "until I received a cease and desist letter from Albert Van Huff on or about February 28, 2012." Jarrah Affidavit, dated July 25, 2013 (Exhibit B to Motion), at 1, ¶ 4. Jarrah further states that he did not know that Rebels III was operating in Oak Ridge "until it opened in March of 2012." *Id*., ¶ 5. Plaintiffs also have submitted Defendants' discovery responses dated July 31, 2013,[3] in which Defendants admit that Truesdell knew in August 2009 that Rebels I was operating; that, at the time of the Rebels II

---

[3]   Supplement [Doc. # 32]. Plaintiffs' certificate of conference states that Defendants object to the Supplement. The objections are overruled. The discovery responses attached to the Supplement as Exhibit A are dated July 31, 2013, two days after the pending Motion was filed on July 29, and thus Plaintiffs could not have attached them to their Motion. The Supplement also was filed on August 9, 2013, which was only two weeks after the discovery responses and, moreover, two weeks before Defendants' Response to the Motion.

opening in November 2009, Defendants knew that Plaintiffs' establishment (Rebels I) was in operation; and, that Truesdell knew, when he hired a painter named Gary S. Holman to paint the signage for Rebels II and Rebels III, that Holman previously had painted the same signage for Rebels I.[4]

Defendants' summary judgment response attaches an affidavit from Defendant Truesdell dated August 23, 2013 ("Supplemental Truesdell Affidavit"). The only difference between the Supplemental Truesdell Affidavit and the affidavit he filed in response to Plaintiffs' earlier motion on the merits of Plaintiffs' Section 43 Lanham Act claim is Truesdell's statement that "Reservoir, Inc. gave me permission to use the Rebels Honky Tonk name and concept I had developed." Supplemental Truesdell Affidavit (Exhibit A to Response), at 1, ¶ 4.[5]

Discovery in this case closed on September 9, 2013, and the parties' deadline for dispositive motions was October 3, 2013.

## II. **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary

---

[4] Defendants' Response to Reservoir, Inc. and Mohammad Ayman Jarrah's First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission (Exhibit A to Supplement), at 3 (Requests for Admission Nos. 1-4), 6 (Requests for Admission Nos. 16-18).

[5] *See* Affidavit of Justin Z. Truesdell, dated Feb. 4, 2013 (Exhibit A to Doc. # 16) ("Original Truesdell Affidavit").

judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal citations and quotations omitted).

If the moving party meets its initial burden, the non-movant must go beyond the

pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002), *overruled on other grounds*, *Grand Isle Shipyards, Inc., v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.

*Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, although the Court may consider all materials in the record when deciding a summary judgment motion, "the court need consider only the cited materials." FED. R. CIV. P. 56(c)(3). "When evidence exists in the summary judgment

record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotation marks omitted).

## III. ANALYSIS

Plaintiffs' Motion requests partial summary judgment on the equitable defenses of laches, estoppel, and waiver; seeks a finding of liability under Section 43; and requests injunctive relief, with damages reserved for later determination.

### A. Equitable Defenses

#### 1. Laches

Defendants argue that Plaintiffs' Section 43(a) claim is subject to laches because Plaintiffs delayed unreasonably in bringing their claim. This equitable defense of laches requires proof that Plaintiffs delayed in asserting their trademark rights, that the delay was inexcusable, and that the delay caused undue prejudice to Defendants. *See Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 334 (5th Cir. 2008); *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 668 (5th Cir. 2000); *Elvis Presley Enters., Inc. v. Capece,* 141 F.3d 188, 205 (5th Cir. 1998). *See Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 356 (5th Cir. 2011).

The first element of laches requires the Court to consider whether Plaintiffs delayed in bringing their trademark infringement claim. Defendants argue that Plaintiffs' trademark infringement claim is barred by laches because Plaintiffs "delayed" thirty-three months before bringing this suit in August 2012. Defendants identify the starting date for the thirty-three month period as November 2009, when they opened Rebels II in Austin. Plaintiffs dispute that November 2009 is the trigger date; Plaintiffs argue, based on the Jarrah Affidavit, that Plaintiffs learned of Rebels II in February 2012 and learned of Rebels III in March 2012.[6]

Defendants fail to provide competent summary judgment evidence that Plaintiffs delayed assertion of their trademark rights. Defendants cite generally to the Supplemental Truesdell Affidavit in support of their assertion that "Plaintiffs knew about the alleged infringement in November of 2009." Response, at 9-10. That affidavit, however, contains nothing regarding when Plaintiffs acquired knowledge of the existence or operation of Rebels II.[7] In contrast, there is uncontroverted

---

[6] Jarrah Affidavit, at 1, ¶ 4 ("I did not know that another Rebels Honky Tonk was operating in Austin, Texas until I received a cease and desist letter from Albert Van Huff on or about February 28, 2012."); *id*., ¶ 5 ("I did not know a Rebels Honky Tonk was operating in Oak Ridge, Texas until it opened in March of 2012.")

[7] The Supplemental Truesdell Affidavit contains some statements regarding the relevant time period. Truesdell avers that his partnership with Reservoir dissolved before Rebels I opened in August 2009, Supplemental Truesdell Affidavit, at 1, ¶ 3; that Reservoir gave him permission to use the Rebels Honky Tonk name and concept
(continued...)

evidence in the record that Plaintiffs only learned of Defendants' use of the Rebels Honky Tonk name and design in February 2012, when Plaintiffs received Defendants' cease and desist letter. *See* Jarrah Affidavit, at 1, ¶ 4; Cease and Desist Letter, dated February 28, 2012 (Exhibit D to Motion). Plaintiffs brought suit in August 2012, less than six months thereafter. Defendants have not demonstrated a genuine issue of material fact that Plaintiffs delayed inexcusably in asserting their claim.[8]

In addition, even if Defendants' evidence could be deemed sufficient to demonstrate that Plaintiffs had knowledge of Rebels II in November 2009, the application of the equitable defense of laches would not be justified. Assuming that Plaintiffs had knowledge of Rebels II in November 2009, Plaintiffs waited only thirty-three months before bringing their claim. Because the Lanham Act does not specify a limitations period, courts applying the laches defense consider "'the most analogous state statute of limitations" when determining the appropriate period for bringing a claim. *See Jaso*, 435 F. App'x at 356 (quoting *Conopco, Inc. v. Campbell Soup Co.,*

---

[7] (...continued)
he had developed, *id.*, ¶ 4; and that he opened Rebels II in Austin in November 2009, *id.*, ¶ 5. None of these statements provide support for Defendants' assertion that Plaintiffs knew about Defendants' infringement in November 2009.

[8] *See Alexander*, 392 F.3d at 142 (factual controversies are resolved in favor of the non-movant only when both parties have submitted evidence of contradictory facts). The non-movant's burden is not satisfied by conclusory allegations or unsubstantiated assertions. *See Delta*, 530 F.3d at 399

95 F.3d 187, 191 (2d Cir. 1996)). Plaintiffs argue that the presumptive period for timeliness of Section 43(a) claims, based on the analogous Texas limitations period for fraud, is four years, and Defendants' briefing does not dispute this contention. The Fifth Circuit has not decided the issue. However, in *Jaso*, the Court of Appeals accepted the parties' agreement that the four year period applied.[9] Taking the same approach, the Court concludes that a delay of thirty-three months, which is well within the four year limitations period for fraud claims, does not warrant application of a laches defense.[10]

Summary judgment is granted for Plaintiffs regarding the affirmative defense of laches on Plaintiffs' claim of trademark infringement under Section 43(a).

---

[9] *See id.* ("The parties do not dispute, and we assume for purposes of this case, that the most analogous Texas statute of limitations for a Lanham Act claim is the four-year statute of limitations applied to fraud claims under § 16.004 of the Texas Civil Practice & Remedies Code."). *See also Mary Kay, Inc. v. Weber,* 601 F. Supp. 2d 839, 859–60 (N.D. Tex. 2009) ("In Texas, a Lanham Act violation is governed by the four year statute of limitations under Texas law.").

[10] The Court is the finder of fact on equitable defenses, as the constitutional guarantee of a jury trial applies only to claims that are legal, rather than equitable, in nature. *See Curtis v. Loether*, 415 U.S. 189, 193 (1974); *Ross v. Bernhard*, 396 U.S. 531, 533 (1970); *Nimrod Mktg. (Overseas) Ltd. v. Tex. Energy Inv. Corp.*, 769 F.2d 1076, 1079-1080 (5th Cir. 1985). Also, when evaluating equitable defenses, a court has considerable discretion. *See Nat'l Ass'n of Gov. Employees v. City Pub. Serv. Bd.,* 40 F.3d 698, 707 (5th Cir. 1994); *Radiator Specialty Co. v. Pennzoil-Quaker State Co.*, 207 F. App'x 361, 362 (5th Cir. 2004). Defendants have not identified any facts to justify the Court's exercise of discretion to apply laches.

### 2.    Waiver

Defendants argue that Plaintiffs' claims are waived because Plaintiffs did not file suit until August 2012, thirty-three months after Rebels II opened in Austin in November 2009 and six months after Plaintiffs received Defendants' cease and desist letter.  At this stage of the proceedings, the Court assumes without deciding that waiver is a viable defense to a trademark infringement claim.  *See RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 711 n.12 (S.D. Tex. 2009) (Rosenthal, J.) ("It is unclear whether the Fifth Circuit recognizes a separate defense of waiver or estoppel in the trademark context").

Under Texas law, "'[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right.'" *Id.* (quoting *Ulico Cas. Co. v. Allied Pilots Ass'n,* 262 S.W.3d 773, 778 (Tex. 2008)).  Defendants assert that the equitable defense of waiver should apply because Plaintiffs gave Truesdell permission to use the Rebels Honky Tonk name and design, and that "[g]ranting him permission was a manifestation of an unequivocal intention to no longer assert a right to the mark."  Response, at 7.  In support of this position, Defendants cite to Truesdell's Supplemental Affidavit, which in Paragraph Four makes the cursory statement that "Reservoir, Inc. gave me [Truesdell] permission to use the Rebels Honky Tonk name and concept I had developed."  Supplemental

Truesdell Affidavit, at 1, ¶ 4.[11] The affidavit does not provide any further detail regarding the circumstances of Truesdell's receipt of the alleged permission. Construing the evidence in the light most favorable to the non-movant, at this summary judgment stage, the affidavit is deemed sufficient to raise a genuine issue of material fact as to whether Plaintiffs intentionally relinquished their trademark rights.[12] These matters are best decided at trial. Summary judgment is denied on Defendants' affirmative defense of waiver.

In connection with the Joint Pretrial Order, the parties must brief the issue of whether the equitable defense of waiver is a valid defense to a claim of trademark infringement under the Lanham Act. *See Trendsetter*, 655 F. Supp. 2d at 711 n.12.

---

[11] This assertion of permission is new to the Supplemental Affidavit, which was executed by Truesdell only after Plaintiffs' current partial summary judgment motion was filed. Other than the assertion of permission in Paragraph Four, the content of the Supplemental Affidavit is identical to that of the Original Truesdell Affidavit, signed February 4, 2013.

[12] The record contains substantial evidence supporting Plaintiffs' position that they did not intentionally relinquish their rights. In particular, Plaintiffs opened Rebels I in Houston in August 2009 using the Rebels Honky Tonk trademark and trade dress, Plaintiffs have continued operations to the present day, and Plaintiffs have filed this lawsuit to prevent Defendants from using the trademark and trade dress. Moreover, it is clear from Defendants' discovery responses that Defendants knew about Plaintiffs' use of the trademark when Defendants took steps to create and operate their two competing establishments. *See* Defendants' Response to Requests for Admission (Exhibit A to Supplement), at 3, 6.

### 3. Estoppel

Defendants argue that the equitable defense of estoppel should be applied to bar Plaintiffs' Section 43(a) claim. As with the waiver doctrine, the Court will assume, without deciding, that estoppel is a viable defense to trademark infringement.[13] Under Texas law, the doctrine of equitable estoppel requires "'(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations.'" *Ulico*, 262 S.W.3d at 778 (quoting *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 515–16 (Tex. 1998)). *See Monumental Life Ins. Co. v. Hayes-Jenkins*, 403 F.3d 304, 311 (5th Cir. 2005); *Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 341 F.3d 415, 422 (5th Cir. 2003). "'The burden of proving an estoppel and the essential elements thereof is on the party asserting it and the failure to prove any one or more of the elements is fatal.'" *Med. Care*, 341 F.3d at 422-23 & n.20 (quoting *Barfield v. Howard M. Smith Co. of Amarillo*, 426 S.W.2d 834, 838 (Tex.1968)).

Defendants assert that estoppel applies because "Plaintiffs made a false representation when they told Justin Z. Truesdell he had their permission to use the

---

[13] *See id.* ("It is unclear whether the Fifth Circuit recognizes a separate defense of waiver or estoppel in the trademark context").

mark, they intended for him to rely on it, he reasonably relied on the representation to his detriment, and now plaintiffs have changed their position." Response, at 8. In support, Defendants cite generally to the Supplemental Truesdell Affidavit. The only portion of the Supplemental Affidavit that potentially addresses Defendants' estoppel assertions is Paragraph Four, in which Truesdell superficially states that Reservoir "gave [Truesdell] permission to use the Rebels Honky Tonk name and concept [he] had developed." In light of the need for a trial on Defendants' affirmative defense of waiver, the Court denies summary judgment as to the affirmative defense of estoppel.

In connection with the Joint Pretrial Order, the parties must brief the issue of whether the equitable defense of estoppel is a valid defense to a claim of trademark infringement under the Lanham Act. *See Trendsetter*, 655 F. Supp. 2d at 711 n.12.

### B.     Plaintiffs' Claim under Section 43(a)

Plaintiffs' Motion seeks entry of judgment on their Section 43(a) claim. This Court previously held that Plaintiffs have proved the two elements of a Section 43(a) claim, namely (1) ownership of a legally protectible mark, and (2) likelihood of confusion in the minds of potential consumers. *See* Memorandum and Order [Doc. # 22]. The Court refrained from entering judgment in Plaintiffs' favor because it had not adjudicated the equitable defenses raised by Defendants. *See* Order [Doc. # 29]. Because two of Defendants' affirmative defenses remain pending, judgment will not

be entered on Plaintiffs' claim of statutory trademark infringement under Section 43(a).

### C. Remedies

Plaintiffs' First Amended Complaint seeks both damages and injunctive relief. For purposes of the upcoming trial, certain deficiencies in the record need to be addressed.[14] Although Plaintiffs' Motion addresses injunctive relief, their briefing does not adequately address all relevant issues. A permanent injunction is an extraordinary equitable remedy.

> The party seeking a permanent injunction must meet a four-part test. It must establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest.

*VRC LLC v. City of Dallas,* 460 F.3d 607, 611 (5th Cir. 2006) (citations omitted). *See O'Connor v. Smith*, 427 F. App'x 359, 365 (5th Cir. 2011).[15] Other Fifth Circuit authority recognizes that the inadequacy of monetary damages also is a factor in the

---

[14] Plaintiffs' Motion does not address damages, except to request that the quantum of damages be reserved for future determination. The Court soon will address a pending discovery dispute on the damages issue. *See* Doc. # 35 (letter alerting Court to discovery dispute); Doc. # 39 (setting discovery conference for Oct. 15, 2013).

[15] Plaintiffs set forth the standard for a preliminary injunction, rather than permanent injunctive relief. Their First Amended Complaint seeks a permanent injunction. The standard for a preliminary injunction is similar to that for a permanent injunction set forth above, although a party seeking a preliminary injunction must show a "substantial likelihood of success on the merits," *see Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011), rather than achieve actual success on the merits.

analysis.[16] Permanent injunctions are "never lightly given" and are "hedged about with circumspection." *Posada v. Lamb County,* 716 F.2d 1066, 1070 (5th Cir. 1983). To win a permanent injunction, a petitioner "must show a clear threat of continuing illegality portending immediate harmful consequences irreparable in any other manner." *Id.*[17]

Plaintiffs' briefing is insufficient as it does not identify the conduct by Defendants that Plaintiffs now seek to enjoin.[18] If Plaintiffs continue to seek injunctive relief in this case, they must specify the particular conduct they seek enjoined with citation to authority supporting each aspect of the requested relief. Plaintiffs also must demonstrate how the relief satisfies the Fifth Circuit's factors listed above.

### D. **Remaining Claims in Lawsuit**

Plaintiffs in their First Amended Complaint plead common law trademark infringement under Texas law, common law unfair competition under Texas law,

---

[16] *See ITT Educ. Servs., Inc. v. Arce,* 533 F.3d 342, 347 (5th Cir.2008) (quoting *eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006)).

[17] *Accord Ballenger v. Mobil Oil Corp.,* 138 F. App'x 615, 622 (5th Cir. 2005). *See Westchester*, 214 F.3d at 671-75 (affirming lower court's ruling regarding trademark infringement but finding error in the award of broad injunctive relief and remanding for further factual development).

[18] The First Amended Complaint, at 13-14, enumerates some requested injunctive relief that Plaintiffs may still seek.

injury to business reputation and trademark dilution under Texas Business and Commerce Code § 16.29, and trade dress infringement under Section 43(a). The parties have not briefed these claims, nor sought a ruling on summary judgment. On or before **October 25, 2013**, Plaintiffs must notify the Court whether they intend to proceed to trial on one or more of these claims.

## IV.     CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiffs' Motion for Partial Summary Judgment and Injunction [Doc. # 30] is **GRANTED in part** and **DENIED in part**. Summary judgment is **GRANTED** in favor of Plaintiffs as to Defendants' equitable defense of laches. Summary judgment is **DENIED without prejudice** as to Defendants' equitable defenses of waiver and estoppel. It is further

**ORDERED** that, on or before **October 25, 2013**, Plaintiffs must file a status report with the Court that discloses whether Plaintiffs intend to pursue at trial its claims other than statutory trademark infringement under Section 43(a).

SIGNED at Houston, Texas, this **9th** day of **October, 2013**.

_____
Nancy F. Atlas
United States District Judge