## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

RESERVOIR, INC., *et al.*,  §
       Plaintiffs,  §
         §
v.  §       CIVIL ACTION NO. 4:12-2756
         §
JUSTIN Z. TRUESDELL, *et al.*,  §
       Defendants.  §

## OPINION

The Court held a bench trial in this trademark infringement case on February 4, 2014. Plaintiffs Mohammad Ayman Jarrah ("Jarrah"), an individual, and Reservoir, Inc. ("Reservoir"), a Texas corporation (collectively, "Plaintiffs") have sued Defendants Justin Z. Truesdell ("Truesdell"), Rainbow Cattle Company, Inc. ("Rainbow Cattle"), Rebels Honky Tonk LLC, and 26710 North I45 Limited Partnership (collectively, "Defendants"). Having considered the testimony of numerous witnesses, all other evidence in the trial record, and the applicable legal authorities, the Court makes the following findings of fact and conclusions of law. In summary, the Court holds that Defendants infringed and, to some extent, diluted Plaintiffs' trademarks, but did not infringe Plaintiffs' trade dress. The Court holds that Defendants are not entitled to benefit from any equitable defenses to infringement. The Court orders cancellation of Defendants' trademarks in issue,

denies an injunction and grants Plaintiffs limited damages.  The Court concludes this is not an exceptional case and denies Plaintiffs' request for an award of attorneys' fees.

## I.    <u>FINDINGS OF FACT</u>[1]

At the trial, the Court heard testimony from five witnesses: Defendant Truesdell; Plaintiff Jarrah; Gary Holman ("Holman"); Kim Stovall ("Stovall"); and Joe Applewhite ("Applewhite").  The Court credits some but not all of these witnesses' testimony.[2]

Both Truesdell and Jarrah[3] are veterans of the restaurant, nightclub, and bar business.  Truesdell has worked in the hospitality industry for over twenty-three years, and has owned or managed various bars, restaurants, and nightclubs in Houston, Austin, and, from time-to-time, elsewhere.  Jarrah has worked in the bar

---

[1]    The Court explains the evidence and uses various forms of the word "find" to indicate a finding of fact, and sets forth legal principles and uses forms of the words "hold" and "conclude" to indicate a conclusion of law.  To the extent a finding of fact is more properly a conclusion of law, and to the extent a conclusion of law is more properly a finding of fact, it should be so construed.

[2]    In particular, the Court does not credit all the testimony by Jarrah, Truesdell, or Applewhite.

[3]    The named party individuals both failed to distinguish in their testimony between the corporate entities and the individuals with regard to the entities' ownership, as well as regarding ownership of the bars in issue.  In certain respects, the parties' documents also are not clear on the matter.  Accordingly, the Court refers to "Plaintiffs" and "Defendants" jointly throughout this opinion.

business for approximately fifteen years.

In mid-2009, Plaintiffs opened a club[4] named "Rebels Honky Tonk" on Washington Avenue in Houston, Texas ("Rebels Houston") .  Plaintiffs used, in connection with the club, the service mark REBELS HONKY TONK (the "Rebels Word Mark") in which they have senior rights, as explained hereafter.  Jarrah leased the space for Rebels Houston in February 2009.  To create and operate Rebels Houston, Jarrah enlisted the help of others, including Truesdell, Applewhite, and Dustin Jones ("Jones").  At Jarrah's invitation, Truesdell began to work on Rebels Houston in Summer 2009.  The witnesses disagree about how the parties met,[5] but it is clear that Jarrah and Truesdell worked together (with the assistance of Applewhite and Jones) between June and August 2009.[6]  Jarrah invested approximately $400,000. Truesdell contributed no funds but was actively involved in development of the country western-theme for the bar and its name.  During that period, a designer identified by Truesdell was hired to create a logo for Rebels Houston.  The logo

---

[4]     The Court, like Plaintiffs and Defendants, refer to the "Rebels Honky Tonk" establishments interchangeably as "clubs" and "bars."

[5]     Truesdell stated that Jarrah approached him about them jointly setting up a nightclub; Jarrah stated that he brought on Jones to be a floor manager for Rebels Houston, and that Jones brought along Applewhite and Truesdell.

[6]     The Court rejects Jarrah's testimony that he and Truesdell never spoke or, at most, spoke infrequently during this period.

consisted of a cowboy hat with a star, placed on top of a pair of longhorns and a pillow-shaped sign carrying the words "Rebels Honky Tonk" (the "Rebels Composite Mark," and together with the "Rebels Word Mark," the "Rebels Marks" or "Marks").

During construction, Truesdell arranged for Holman, an artist, to paint the Rebels Composite Mark on the top of the facade of the Rebels Houston building. Holman also painted an enormous mural on an interior wall behind the serving bar; the mural depicted numerous iconic Hollywood and western historical figures leaning on a bar (*e.g.*, Willie Nelson, Marilyn Monroe, and John Wayne).

In August 2009, the relationship between Jarrah and Truesdell disintegrated. Truesdell sought a written partnership agreement. Jarrah declined the terms Truesdell requested, and Truesdell ceased working on the Rebels Houston project. Truesdell and Jarrah never signed any written agreement. Indeed, they had no employment, operating, or partnership contract. On the other hand, Jarrah, Applewhite, and Jones did execute a "Management/Operating Agreement" pursuant to which Applewhite and Jones agreed to manage Rebels Houston in exchange for 17% of the bar's net revenues.

When the parties parted ways, Truesdell did not request permission from Jarrah to use the Rebels Marks for his own club or for any other purpose. Truesdell, in anger or a fit of pique at the time of the break up, may have threatened Jarrah that he would use the "Rebels Honky Tonk" name in Austin, but Jarrah did not affirmatively

give Truesdell permission to use any of the Rebels Marks.

In November 2009, Truesdell opened a "Rebels Honky Tonk" bar in Austin, Texas ("Rebels Austin").[7]   Truesdell hired Holman to paint the Rebels Composite Mark on the facade of Rebels Austin.   On a wall of the outside patio of Rebels Austin, Holman painted a very large mural that closely resembled the mural he had painted inside Rebels Houston.

Rebels Austin was not affiliated with Rebels Houston or authorized by Plaintiffs.  At the time he opened Rebels Austin, Truesdell knew Jarrah was operating Rebels Houston under the public name "Rebels Honky Tonk" and using the same logo as Rebels Austin.

At some point, Jarrah learned that a Rebels Honky Tonk had opened in Austin. It is unclear when he obtained this knowledge but it appears to have been in or about early 2010, well before Jarrah received a request from Truesdell in February 2012 to stop using the Rebels Marks.

In or about March 2012,[8] Defendants opened a second club named "Rebels

---

[7]     The Court notes that, a few weeks before trial, Truesdell changed the name of Rebels Austin to "Rowdys Saloon."

[8]     Truesdell previously signed an affidavit stating that Rebels Woodlands opened in March 2012.  In his testimony at trial, Truesdell flatly contradicted himself by stating that Rebels Woodlands did not open until "at least" May, if not June, 2012.  The Court finds that the earlier affidavit is correct, and that the bar opened in March 2012.

Honky Tonk" in Oak Ridge, Texas, a town in the Houston suburbs near The Woodlands, Texas ("Rebels Woodlands"). Defendants hoped to and did lure patrons from Rebels Houston by enabling them to avoid traveling to downtown Houston. Defendants used the Rebels Marks for Rebels Woodlands. Rebels Woodlands operated for approximately ten months, from March to December, 2012.[9] Rebels Woodlands was advertised on the same Houston-area radio station as Rebels Houston. Jarrah learned about Rebels Woodlands from these radio advertisements at or about the time that Rebels Woodlands opened. Plaintiffs had no financial or corporate affiliation with Rebels Woodlands.

Meanwhile, in June 2010, Truesdell filed an application with the United States Patent and Trade Office ("USPTO") to register the Rebels Marks. Despite knowledge that Rebels Houston had been in operation using the Rebels Marks since August 2009, Truesdell, through his attorney who actually filed and signed the application, stated misleadingly in his USPTO application that the "first use" of the Rebels Marks was "as least as early as 3/11/2010." Truesdell, through his counsel, also falsely declared that "to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce." The USPTO

---

[9]     In December 2012, Rebels Woodlands closed; it is now a restaurant named "Mama J's BBQ."

granted registration of the Rebels Marks on April 5, 2011.

In February 2012, Jarrah learned that Truesdell had registered the Rebels Marks with the USPTO in his name when Truesdell and Rainbow Cattle (to whom the Rebels Marks were licensed) sent a cease-and-desist letter requesting that Plaintiffs stop using the Rebels Marks. Jarrah filed this case in Texas state court in August 2012, to enforce his common law trademark rights in the Rebels Marks. The case thereafter was removed to this Court.

## II.   CONCLUSIONS OF LAW

### A.   Partnership Between Jarrah and Truesdell

The Texas Revised Partnership Act ("TRPA") "provides that an association to carry on a business for profit as owners creates a partnership."[10]  *Ingram v. Deere*, 288 S.W.3d 886, 895 (Tex. 2009) (citing TEX. REV. CIV. STAT. art. 6132b-2.02(a) (expired January 1, 2010)).  Under the TRPA, five factors indicate a partnership: "(1) receipt or right to receive a share of profits of the business; (2) expression of an intent to be partners in the business; (3) participation or right to participate in control of the business; (4) sharing or agreeing to share: (A) losses of the business; or (B)

---

[10]    The TRPA was made effective on January 1, 1994, and expired on January 1, 2010. Because Truesdell claims that a partnership was formed (and dissolved) in 2009, the TRPA governs in this action.  *See Rojas v. Duarte*, 393 S.W.3d 837, 841 n.2 (Tex. App. Ct.–El Paso 2012, pet. denied) ("Although the TRPA expired on January 1, 2010, it was in effect during all of the events made the basis of this lawsuit.").

liability for claims by third parties against the business; and (5) contributing or agreeing to contribute money or property to the business." *Id.* (citing TEX. REV. CIV. STAT. art. 6132b-2.03(a) (expired January 1, 2010)).  A partnership can be created without each factor being met. *Id.* at 896.  Texas courts must apply a "totality-of-the-circumstances" test in applying these factors. *Id.*  The party asserting existence of a partnership under the TRPA has the burden to prove creation of that partnership. *See Hoss v. Alardin*, 338 S.W.3d 635, 640-41 (Tex. App. Ct.–Dallas 2001, no pet.).

Truesdell has failed to prove that he entered into a partnership with Jarrah or Reservoir, let alone a partnership permitting him to use the Rebels Marks without Plaintiffs' permission.  While Truesdell wanted, and arguably may have offered, to enter into a partnership with Jarrah, Jarrah did not agree to the terms Truesdell demanded.[11]  Furthermore, Truesdell offered no evidence addressing the other TRPA factors.  Truesdell admitted he did not contribute any funds or property to the Rebels Houston enterprise[12] and did not agree to share losses.  No partnership was created between any of Plaintiffs and any of Defendants.[13]

---

[11]    The Court recognizes that the "TRPA does not require direct proof of the parties' intent to form a partnership" and that intent is not necessarily the "prime" factor in creating a partnership under the TRPA.  *Ingram*, 288 S.W.3d at 895-96.

[12]    Jarrah testified that he invested $400,000.

[13]    Moreover, even if one could find that a partnership had been formed, which it was
(continued...)

### B.   __Trademark Infringement__

#### 1.   Infringement

The Lanham Act creates liability for "[a]ny person who . . . uses in commerce any word, term, name, symbol, or device . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . "  15 U.S.C. § 1125(a)(1)(A).  A party alleging trademark infringement must show: (1) ownership in a legally protectable mark, and (2) a likelihood of confusion in the minds of potential customers caused by the infringer's use of the mark.  *See Bd. of Supervisors for La. State Univ. Agric. and Mech. Coll. v. Smack Apparel Co*., 550 F.3d 465, 474 (5th Cir. 2008).  Ownership of a mark is established by use in the market, not by registration.  *See Smack Apparel*, 550 F.3d at 475; *Union Nat'l Bank of Tex., Laredo v. Union Nat'l Bank of Tex., Austin*, 909 F.2d 839, 842 (5th Cir. 1990).  Thus, the "senior user" who first uses the mark in the marketplace "is entitled to enjoin other 'junior' users from using the mark, or one that is deceptively similar to it."  *Union Nat'l Bank*, 909 F.2d at 842-43.

---

(...continued)
  not, the partnership clearly dissolved in August 2009, prior to the opening of Rebels Houston and the first use of the Rebels Marks in commerce.

The Court has previously held that Defendants infringed Plaintiffs' mark.  *See* Memorandum and Order, dated April 30, 2013 [Doc. # 22], at 10-12.  The evidence at trial reinforces that conclusion.  Plaintiffs are the senior users of the Rebels Marks, having first used them in connection with Rebels Houston in August 2009. Defendants do not contest this fact; the evidence is clear that Truesdell did not begin using the Rebels Marks until, at earliest, November 2009, when he opened Rebels Austin.  Thus, Plaintiffs have established ownership in the Rebels Marks.[14]

The Court concludes that Defendants' use of the Rebels Marks caused consumer confusion arising from Rebels Austin (to a limited extent) and Rebels Woodlands (to a great extent).  In determining whether a defendant's use of a mark is likely to cause confusion, the Fifth Circuit considers eight factors: "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers."  *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).  No factor is dispositive, and "a finding of likelihood

---

[14]    Defendants do not contest that the mark is legally protectable.  Indeed, Truesdell himself sought and obtained registration of the Rebels Marks with the USPTO.  That registration, though obtained by Truesdell, is "prima facie evidence of the mark's validity."  *See Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998).

of confusion need not be supported even by a majority of the . . . factors." *Id.* (citing *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985)).

In the case at bar, Defendants used the Rebels Marks on the exact same product, a country western-theme club in Texas, as Plaintiffs.  Given the use of the same mark in the same manner, a "presumption of confusion exists." *See Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 540 (S.D. Tex. 2013) (Costa, J.) (citing *Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 310-11 (5th Cir. 2008), and *TGI Friday's Inc. v. Great Nw. Rests, Inc.*, 652 F. Supp. 2d 763, 767 (N.D. Tex. 2009)).  Even without this presumption, however, an analysis of the "likelihood of confusion" factors, as detailed in *American Rice*, leads the Court to the same conclusion.

Plaintiffs' Marks are strong.  "Marks may be classified as generic, descriptive, suggestive, or arbitrary and fanciful." *Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.*, 725 F.2d 336, 346 (5th Cir. 1984).  These categories are "commonly viewed as central tones in a spectrum." *Id.*  While "Honky Tonk" is a generic term that generally describes country western-theme bars, "Rebels" is arbitrary and fanciful, at least in connection with "honky tonks."  Similarly, the Rebels Composite Mark—a combination of the Rebels Word Mark and an arbitrary logo design—is clearly fanciful.

Plaintiffs and Defendants used the Rebels Marks on the same product: country western-theme clubs in Houston, a Houston suburb (Oak Ridge/The Woodlands), and Austin.  Indeed, Defendants opened their second club, Rebels Woodlands, reasonably near Plaintiffs' club, Rebels Houston.[15]  There also is evidence that many college-age and young adult Houstonians, the market for Rebels Houston, spend leisure time in Austin.  Defendants thus used Plaintiffs' exact mark on the same product in roughly the same geographic area.  Accordingly, the second, third, and fourth factors, respectively (the similarity of design of the marks, the similarity of the products, and the identity of retailers and purchasers) all favor a finding of a likelihood of confusion.

The fifth factor, similarity of advertising media used, also supports a finding of likelihood of confusion.  Jarrah testified that he spent approximately $120,000 on radio advertising for Rebels Houston during a three-month period and that Rebels Woodlands advertised on the same radio station in the same Houston radio media market.  Defendants have not rebutted Plaintiffs' evidence in any way.  The similarity in advertising likely confused Houston area consumers as to the ownership or

---

[15]     The Court takes judicial notice that the distance between the two bars is approximately 30 miles.  *See* GOOGLE MAPS, https://goo.gl/maps/t86En (last accessed Feb. 24, 2014).

sponsorship of Rebels Houston and Rebels Woodlands.[16]

The Court turns to the last three factors regarding proof of customer confusion. Defendants used the mark under a claim of right, and thus did not intend to infringe on Jarrah's rights in the Rebels Marks.  This factor tips in Defendants' favor. Plaintiffs present no probative evidence of actual confusion in the mind of any customer at Defendants' establishments, Rebels Austin and Rebels Woodlands, regarding ownership or sponsorship of those clubs or their connection to Plaintiffs' Rebels Houston, and thus this factor tips in Defendants' favor.  Finally, Plaintiffs have offered no proof of the "degree of care" exercised by customers of any Rebels location, making this factor neutral.

Ultimately, evaluation of all eight factors regarding confusion persuades the Court that Plaintiffs have met their burden to establish a likelihood of confusion stemming from Defendants' use of the Rebels Marks at Rebels Woodlands and, to a lesser degree, Rebels Austin.  Accordingly, Defendants' use of the Rebels Marks at both Rebels Woodlands and Rebels Austin infringed Plaintiffs' trademark rights.

---

[16]     The Court credits Jarrah's testimony in this respect, although Plaintiffs did not provide documentary proof of any radio advertising for Rebels Houston or Rebels Woodlands.  There also is no evidence of Rebels Austin's advertising.  Rebels Austin is in a different media market from Houston, and Plaintiffs do not appear to contend that Rebels Austin's advertising affected Rebels Houston's patronage.

### 2.    Affirmative Defenses

Defendants assert the two equitable defenses of waiver and estoppel against Plaintiffs' claim of infringement.  *See* Amended Answer [Doc. # 12] ("Answer"), ¶ 27.[17]  Reviewing Defendants' submissions, it is unclear whether Defendants have intended to assert these common law equitable defenses or, in the alternative, assert the Lanham Act defense of "acquiescence" (also referred to as "estoppel by acquiescence").[18]  Moreover, "[i]t is  unclear whether the Fifth Circuit recognizes a separate defense of waiver or estoppel in the trademark context." *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 711 n.12 (S.D. Tex. 2009) (Rosenthal, J.).[19]  Even if waiver or estoppel is a valid defense to trademark infringement, Defendants have failed to meet their burden to establish any of these defenses.  The Court addresses each affirmative defense in turn.

---

[17]    Defendants also asserted a defense of laches.  *See* Answer, ¶ 27.  The Court rejected this defense by granting Plaintiffs summary judgment on the issue.  *See* Memorandum and Order, dated October 9, 2013 [Doc. # 37], at 9-12.

[18]    In briefing its waiver defense, Defendants cite, *see* Defendants' Memorandum of Law [Doc. # 49-6], at 2, a Fifth Circuit case, *Conan Properties, Inc. v. Conans Pizza, Inc.,* which outlines a district court's jury instruction on the elements of an acquiescence defense.  *See* 752 F.2d at 152 n.3 ("The district court's jury instruction for Conans' acquiescence defense stated in pertinent part . . .").

[19]    Courts differ on whether waiver is a defense to trademark infringement.  *Compare, e.g.*, *adidas Am., Inc. v. Payless Shoesource, Inc.*, 529 F. Supp. 2d  1215, 1256-57 (D. Or. 2007) (entertaining waiver defense in trademark context), *with Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 703 F. Supp. 2d 1307, 1313 n.7 (S.D. Fla. 2010) (refusing to address waiver defense because "the waiver defense has no root in trademark law").

### a.  Waiver

"Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right."  *Tesco Corp. v. Weatherford Int'l, Inc.*, 632 F. Supp. 2d 654, 658 (S.D. Tex. 2009) (citing *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008)) (addressing waiver defense to claim of patent infringement).  To establish waiver, a defendant must show: (1) that the plaintiff held an existing right, benefit, or advantage; (2) the plaintiff's actual knowledge of the existence of that right, benefit, or advantage; and (3) the plaintiff's "actual intent to relinquish that right, or intentional conduct inconsistent with that right."  *Id.*[20]

Defendants have failed to establish that Plaintiffs "intentionally relinquished" their right in the Rebels Marks.  Jarrah never explicitly stated that Truesdell had a right to use the Rebels Marks.  Nor did Truesdell ask Jarrah for permission to use them.[21]  At most, Jarrah failed to properly and timely object when he learned about

---

[20]   As noted, the Court evaluates the elements of this test without deciding whether the common law waiver doctrine is applicable.

[21]   Truesdell's own testimony, if credited, which the Court does not, establishes merely that he claimed and demanded the right to use the Rebels Marks in Austin.  There is no persuasive proof that Jarrah knew the scope of his right and intentionally relinquished a known right.

Truesdell's use of the mark.[22]  This evidence is insufficient to establish waiver.

### b.    Common Law Equitable Estoppel

The doctrine of equitable estoppel "requires the defendant to prove intentional deception through concealment or inaction or gross negligence amounting to constructive fraud." *Source, Inc. v. SourceOne, Inc.*, 2006 WL 2381594, at *8 (N.D. Tex. Aug 16, 2006) (citing *Matter of Henderson*, 577 F.2d 997, 1001 (5th Cir. 1978)). The Fifth Circuit's test for equitable estoppel in the context of copyright infringement requires that "(1) the plaintiff must know the facts of the defendant's infringing conduct; (2) the plaintiff must intend that its conduct shall be acted on or must so act that the defendant has a right to believe that it is so intended; (3) the defendant must be ignorant of true facts; and (4) the defendant must rely on the plaintiff's conduct to its injury." *Carson v. Dynegy, Inc.*, 344 F.3d 446, 453 (5th Cir. 2003).[23]

Defendants have not shown that Plaintiffs engaged in "intentional deception"

---

[22]    The Court also reaffirms its holding, based on the facts presented at trial, that Defendants have failed to establish a laches defense.

[23]    Defendants propose that this standard, taken from the copyright infringement context, applies in the context of trademark infringement.  Defendants, however, have not cited any cases establishing that this test applies to trademark infringement claims. The single case on which Defendants rely, *Officeware Corp. v. Dropbox, Inc.*, 2012 WL 3262760 (N.D. Tex. Aug. 10, 2012), refers to "*collateral* estoppel," and not equitable estoppel.  *See id.* at *3.  In any event, for the sake of completeness, the Court evaluates the elements of this test without deciding whether equitable estoppel is applicable.

or that they concealed the true facts of their use of the Rebels Marks from Defendants. To the contrary, Truesdell knew of Jarrah's use of the Rebels Marks as early as August 2009, when Jarrah and Truesdell worked together on Rebels Houston and when Truesdell assisted in the design and painting of the Marks at Rebels Houston. Indeed, the uncontradicted evidence is that Defendants copied and used the Rebels Marks in Austin in November 2009, fully aware that Jarrah earlier had opened Rebels Houston.[24] Defendants copied the Marks again when they opened Rebels Woodlands in 2012.

Defendants did not detrimentally rely on any representations from Jarrah in deciding to use the Rebels Marks. The Court concludes that Jarrah made no such representation to Truesdell.[25] Moreover, there is no evidence that Truesdell relied on Jarrah's failure to pursue his trademark rights in opening and running either Rebels Austin or Rebels Woodlands. Accordingly, Defendants have not met their burden to prove any common law equitable estoppel defense.

---

[24]   There also is no evidence that Plaintiffs knew of Defendants' use of the Rebels Marks until after Rebels Austin began operating.

[25]   It appears that Defendants contend that Truesdell believed he had a right to use the Rebels Marks because he helped design them and conceived of the Rebels Honky Tonk theme for Rebels Houston. The Court is unpersuaded that these facts are material to Defendants' equitable estoppel defense. Truesdell cavalierly used the Marks in creating Rebels Austin without regard for any rights Plaintiffs had in them.

### c.   Acquiescence

"[A]cquiescence involves the plaintiff's implicit or explicit assurances to the defendant which induces reliance by the defendant." *Conan Props.*, 752 F.2d at 153. To prove acquiescence, a defendant must show: "(1) the plaintiff knew or should have known the defendant's use of the trademark; (2) the plaintiff made implicit or explicit assurances to the defendant that it would not assert a claim; and (3) the defendant relied on the assurances." *Trendsetter Realty*, 655 F. Supp. 2d at 709 (citing *Conan Props.*, 752 F.2d at 153); *see also Sara Lee Corp. v. Kayser Roth Corp.*, 81 F.3d 455, 462 (4th Cir. 1996) ("An infringement action may be barred by the doctrine of estoppel by acquiescence where the owner of the trademark, by conveying to the defendant through affirmative word or deed, expressly or impliedly consents to the infringement.").  Acquiescence involves *active* consent by the senior user.  *See Sara Lee Corp.*, 81 F.3d at 462; *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996) ("Acquiescence is an equitable defense that denotes active consent by a senior user to another's use of the mark.").[26]

Jarrah did not actively consent to Truesdell's or Defendants' use of the Rebels Marks, nor did he otherwise assure Truesdell that he could use the Marks.  The

---

[26]   The requirement of "active consent" distinguishes acquiescence from laches.  *See Sara Lee Corp.*, 81 F.3d at 462 ("[A]cquiescence implies active consent, while laches implies a mere passive consent.").

evidence reflects that Truesdell decided, on his own, to open Rebels Austin and, later, Rebels Woodlands.  He did not explain his plan to Jarrah.  Jarrah provided no assurance that Truesdell could use the Rebels Marks.  Accordingly, Defendants have failed to establish an acquiescence defense.

### C.   Trade Dress Infringement

A plaintiff can bring an action under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for "trade dress" infringement, even where the alleged trade dress is not registered.  *Wal-Mart Stores, Inv. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000).  "To prove infringement of a trade dress, a plaintiff must show (1) that the dress is protectable, and (2) that infringement has occurred."  *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 700 (S.D. Tex. 2013) (Ellison, J.) (citing *Taco Cababa Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1117-18 (5th Cir. 1991), *aff'd*, 505 U.S. 763, 774-76 (1992)).  Trade dress is "protectable" if it is "distinctive" and nonfunctional.  *Wal-Mart Stores*, 529 U.S. at 210.  Infringement requires a showing of a likelihood of confusion "as to the source, affiliation, or sponsorship of the alleged infringer's product."  *Clearline Techs.*, 948 F. Supp. 2d at 700.  "Trade dress protection has been extended to the overall 'motif' of a restaurant."  *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 (1992)).

Like trademarks, trade dress can be distinctive "if [it] serves as an indicator[]
of source." *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 540 (5th Cir. 1998),
*abrogated on other grounds by TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532
U.S. 23, 32-33 (2001). A trademark "can be distinctive in one of two ways." *Wal-
Mart Stores*, 529 U.S. at 210. First, a mark can be "inherently distinctive if its
intrinsic nature serves to identify a particular source." *Id.* Second, a mark can
acquire distinctiveness when "in the minds of the public, the primary significance of
a mark is to identify the source of the product rather than the product itself." *Id.* at
211. Trade dress, like a mark, can be inherently distinctive, even without acquiring
secondary meaning. *See Two Pesos*, 505 U.S. at 774-76.

There is no evidence in the record that Plaintiffs' trade dress was "distinctive."
Plaintiffs here have presented evidence of only three aspects of Rebels Houston's
"trade dress" that Rebels Austin imitated: a mural of a "bar scene" painted by
Holman, wood or faux-wood paneled walls, and wooden barrels used as cocktail
tables. Holman testified that he painted the "bar scene" mural on an interior wall of
Rebels Houston, and that he was instructed by Truesdell, through a middleman, to
paint a bar scene mural on an outside patio at Rebels Austin. But Holman also
acknowledged that he has painted several comparable murals elsewhere and that,

generally, his artwork in different country western-theme bars is "similar."[27]   This

evidence is insufficient to support a finding or legal conclusion that Rebels Houston's

"bar scene" mural was either inherently distinctive or had acquired distinctiveness

through a secondary meaning.[28]   Further, Plaintiffs have presented no evidence on

whether the mural painted in Rebels Austin is likely to cause confusion regarding the

"source, affiliation, or sponsorship" of the mural.   For example, Plaintiffs have

presented no evidence of, among other things, Defendants' intent in including the

mural in Rebels Austin, actual confusion as a result of the mural, or customer identity.

*See Clearline Techs.*, 948 F. Supp. 2d at 704-05 (listing "nonexhaustive digits of

confusion in evaluating likelihood of confusion").   Indeed, the evidence presented

shows the opposite; the evidence of records establishes that the type of mural Holman

painted in Rebels Austin is found in various other unaffiliated country western-theme

bars and does not suggest any affiliation between Rebels Austin and Rebels Houston

in particular.

Plaintiffs also fail to establish an actionable claim of trade dress infringement

based on the wood (or faux-wood) paneled walls or the use of wooden barrels as

---

[27]      Plaintiffs have not provided any evidence regarding possible trade dress infringement
at Rebels Woodlands.

[28]      While not necessary to the Court's conclusion, the Court notes that Plaintiffs bear the
burden to show that their trade dress is not functional.  *See* 15 U.S.C. § 1125(a)(3).

cocktail tables.  Both of these features are often included in typical designs for country western-theme establishments.  Plaintiffs have not proven a likelihood of confusion regarding Rebels Austin's alleged use of Plaintiffs' trade dress.

### D.   **Trademark Dilution**

Plaintiffs also seek a finding of trademark dilution under Section 16.29 of the Texas Business and Commerce Code (the "Texas Anti-Dilution Act").[29]  The Texas Anti-Dilution Act permits the owner of a mark "to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark."  TEX. BUS. & COM. CODE § 16.29.  To succeed on such a claim, a plaintiff "must show (1) ownership of a distinctive mark and (2) a likelihood of dilution."[30]  *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1564 (S.D. Tex. 1996), *aff'd*, 155 F.3d 526 (5th Cir. 1998) (citing *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 506 (2d Cir.

---

[29]   On September 1, 2012, a new version of the Texas Anti-Dilution Act, codified at Section 16.103 of the Texas Business and Commerce Code, went into effect.  Section 16.103 permits "the owner of a mark that is famous and distinctive, inherently or through acquired distinctiveness, in this state . . . to enjoin another person's commercial use of a mark or trade name that begins after the mark has become famous if use of the mark or trade name is likely to cause the dilution of the famous mark."  TEX. BUS. & COM. CODE § 16.103.  The Statutory Notes to Section 16.103 make clear, however, that changes to the law codified in the new Anti-Dilution Act do not apply to "any suit, proceeding, or appeal pending on the effective date of this Act."  Because Plaintiffs' Original Petition was filed in Texas state court on August 3, 2012, the prior version of the Anti-Dilution Act (*i.e.*, Section 16.29) applies in this case.  *See also US Risk Ins. Group, Inc. v. U.S. Risk Management LLC*, 2013 WL 4504754, at *20 n.3 (N.D. Tex. Aug. 20, 2013).

[30]   Plaintiffs do not assert a claim for trademark dilution under 15 U.S.C. § 1125(c).

1996).  There is no requirement under the Texas Anti-Dilution Act that Defendants'

use of the mark be "commercial" in nature.  *See E. & J. Gallo Winery v. Spider Webs*

*Ltd.*, 129 F. Supp. 2d 1033, 1037 (S.D. Tex. 2001), *aff'd*, 286 F.3d 270 (5th Cir.

2002).  Defendants do not appear to dispute that Jarrah owns the Rebels mark and that

the mark is distinctive.

   A plaintiff can prove the likelihood of dilution under two theories: dilution by

blurring or dilution by tarnishment.  *E. & J. Gallo Winery v. Spider Webs Ltd.,* 286

F.3d 270, 279 (5th Cir. 2002).  "Blurring" involves "a diminution in the uniqueness

or individuality of the mark."  *Id.*  "Tarnishment," in contrast, involves "an injury

resulting from another's use of the mark in a manner that tarnishes or appropriates the

goodwill and reputation associated with the plaintiff's mark."  *Id.*  Plaintiffs have not

alleged, nor have they offered any evidence regarding, "dilution by blurring" with

respect to Truesdell's use of the Rebels mark.

   With respect to "dilution by tarnishment," Jarrah testified that Rebels

Woodlands "affected his local reputation."  Jarrah stated that Rebels Woodlands

served customers as young as 18 years old in an "after hours" setting,[31] unlike Rebels

Houston, which limited patrons to those of legal alcohol drinking age, 21 years and

older.  Jarrah also testified that there were fist fights at Rebels Woodlands, and both

---

[31]    There is no evidence that Rebels Woodlands served *alcohol* to underage patrons, only
       that the establishment was open to customers as young as 18.

Jarrah and Truesdell testified about deaths caused by two separate car crash incidents involving drunk patrons leaving Rebels Woodlands or nearby establishments. Furthermore, Jarrah testified that Rebels Austin opened to patrons ages 18 and older, which is a different "crowd" from the one he cultivates at Rebels Houston. As a result, Jarrah claims that he cannot now open a Rebels location in either Austin or the Woodlands.

Plaintiffs' evidence establishes "likelihood of dilution" by tarnishment with respect to Rebels Woodlands, but not with respect to Rebels Austin. Rebels Woodlands developed a negative reputation. The identity of the name and logo, and the proximity of the two clubs (both in the Houston area), establishes a likelihood that this reputation was also associated with Rebels Houston, at least concerning customers from the Woodlands area and other Houston suburbs who had patronized Rebels Houston until Rebels Woodlands opened. There is no evidence, however, that Rebels Austin's business caused dilution to the Rebels Marks or Rebels Houston's reputation. Service of customers between the ages of 18 and 21 in Austin (the only criticism lodged by Jarrah against Rebels Austin) is not likely to dilute Rebels Houston's reputation in the minds of what Jarrah claimed was an older, more sophisticated clientele in Houston. Accordingly, the Court concludes that the likelihood of tarnishment resulting from Rebels Woodlands makes Defendants liable

for trademark dilution.

### E.   <u>Remedies</u>

#### 1.   **Cancellation of Registration**

"In any action involving a registered mark," a district court has the power to "order the cancellation of registrations."  15 U.S.C. § 1119.  Plaintiffs here urge the Court to cancel the Rebels Marks that Truesdell registered with the USPTO (Registration No. 3,940,282).

The Lanham Act prohibits the registration of a trademark that "consists of or comprises a mark which so resembles . . . a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1052(d).  The test of "likelihood of confusion" under Section 1052(d) is the same as the test for trademark infringement.  *See Trendsetter*, 655 F. Supp. 2d at 712 (citing 3 McCarthy on Trademarks and Unfair Competition §§ 20:15, 20:53 (2009)).  The Court has held and here reaffirms that Defendants infringed on Plaintiffs' Marks in that there is a likelihood of confusion between the Marks as used by Defendants and as used by Plaintiffs.  *See* Memorandum and Order, dated April 30, 2013 [Doc. # 22], at 11-12; *see also supra* Part II.B.1.  Thus, the Court holds that Defendants' use of the Rebels Marks is also

likely to cause confusion under a Section 1052(d) analysis.  *See Trendsetter*, 655 F. Supp. 2d at 712.  Accordingly, the Lanham Act prohibits Truesdell's registration of the Rebels Marks, and Plaintiffs' request for cancellation of Registration No. 3,940,282 is granted.

### 2.    Injunction

Section 1116 of Title 15 of the United States Code authorizes district courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable."  28 U.S.C. § 1116(a).  To obtain an injunction, Plaintiffs must establish "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Whether to grant a permanent injunction lies in the discretion of this Court.  *Id.*

Plaintiffs are not entitled to a permanent injunction barring Defendants from using the Rebels Marks.  The Court notes that Plaintiffs have proven a likelihood of confusion from Defendants' use of the Rebels Marks, which courts have found sufficient to show irreparable injury.  *See Abraham v. Alpha Chi Omega*, 708 F.3d

614, 627 (5th Cir. 2013) ("As to the first factor, a leading treatise states, 'All that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed."); *see also Clearline Techs.*, 948 F. Supp. 2d at 714 (noting that "[s]ome courts have suggested that a finding of likelihood of confusion can satisfy the irreparable harm requirement").

Importantly, however, Defendants voluntarily ceased using the Rebels Marks in connection with their two clubs during the course of this lawsuit, and there is no evidence in the record indicating Defendants will resume (or have any incentive to resume) use of the Rebels Marks in the future.  Continuing acts of infringement, to be sure, are sufficient to show the inadequacy of remedies at law.  *See Alpha Chi Omega*, 708 F.3d at 627 ("There seems little doubt that money damages are 'inadequate' to compensate owner for continuing acts of infringer.").  But, there is no proof in this record that Defendants continue to infringe or are reasonably likely to infringe in the future.  As explained above, Defendants' registration of the Rebels Marks will be cancelled and Defendants now know they have no claim to the Marks.

The Court next concludes, on the second injunction factor, that monetary damages can adequately compensate Plaintiffs for past injury they prove they have suffered.  It is up to Plaintiffs to produce this evidence.[32]  This second factor therefore

---

[32]     As discussed later, *see infra* Part II.E.3, Plaintiffs in fact have not tried to prove with
(continued...)

does not support issuance of an injunction in this case.

The third factor—balancing of the hardships—does not favor either side. The parties have not presented meaningful argument or evidence that they will be harmed by the grant or denial of an injunction, given that Defendants have not indicated an interest in using the Marks without authority.

Finally, the public interest would be disserved by the grant of a permanent injunction on the record presented. There is no evidence that Defendants again will infringe Plaintiffs' rights in the Rebels Marks, now that the parties' rights to the Marks are clearly established. The public has no interest in courts issuing injunctive relief when there is no evidence of continuing infringement and there is no proven likelihood of future infringement. In fact, Truesdell and the other Defendants now are on notice, which they apparently previously were not, that they have no rights to use the Rebels Marks. Given the Court's rulings in this Opinion, should Defendants again infringe on Plaintiffs' rights in the Rebels Marks, such infringement could easily be characterized as "malicious, fraudulent, deliberate, or willful." *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996). For these reasons, the Court denies Plaintiffs' request for a permanent injunction barring Defendants from

---

[32]     (...continued)
         any specificity lost sales at Rebels Houston.  They elected not to present any
         documentary evidence.

using the Rebels Marks.[33]

### 3.    Damages

### a.    Entitlement to Damages

Under the Lanham Act, a plaintiff who proves trademark infringement can receive damages in the amount of "(1) defendant's profits, (2) any damages sustained by the plaintiff, or (3) the costs of the action." 15 U.S.C. § 1117(a). These damages, however, are "subject to the principles of equity." *Id.* A district court is not required to award damages. If proof of a defendant's profits and proof of a plaintiff's damages are too burdensome or are truly unavailable, the Court may award damages "for such sum as the court shall find to be just, according to the circumstances of the case." *Id.*; *see also Seatrax v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000) ("The goal behind §§ 1116 and 1117 remedies is to achieve equity between or among the parties . . . Because each case presents a different set of facts and circumstances, a case-by-case evaluation is warranted to determine the nature of the infringing conduct and its adverse effects, if any, on the plaintiff."). "Great latitude is given the district court in awarding damages under the Lanham Act." *Martin's Herend Imports, Inc. v.*

---

[33]    Because the Court concludes that Defendants have not infringed on Plaintiffs' trade dress, the Court will not issue an injunction requiring Defendants to remove the "bar scene" mural from the Rebels Austin (now "Rowdys Saloon"), the only element of Rebels Houston's trade dress that Plaintiffs have meaningfully asserted as having been infringed.

*Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1304 (5th Cir. 1997).

A district court need not automatically award damages based on an accounting of the defendant's profits. *See Seatrax*, 200 F.3d at 369. Rather, a court should look to the following "non-exhaustive list of factors" in determining whether an accounting of profits is proper: "(1) whether the defendant intended to confuse or deceive; (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting her rights; (5) the public interest in making the conduct unprofitable, and (6) whether it is a case of palming off." *Id.*

Plaintiffs here seek damages in the amount of Defendants' gross profits from Rebels Austin and Rebels Woodlands.[34] In support of their request, Plaintiffs have submitted portions of Rebels Austin's and Rebels Woodlands' bank statements, internal expenditure logs, and state filings regarding liquor sales. Based on the information available, Plaintiffs estimate that Rebels Austin's gross revenue between October 2009 and July 2013 exceeds $2.3 million. Plaintiffs estimate Rebels Woodlands' gross revenue from August 2012 to December 2012 to be more than $600,000.

**_Rebels Austin._**— The Court concludes that damages are unwarranted based on Defendants' use of the Rebels Marks at Rebels Austin. Plaintiffs have failed to

---

[34]     Plaintiffs have not requested, nor have they submitted evidence showing, damages from lost profits they sustained or their costs in prosecuting this action.

show that Defendants' infringement at Rebels Austin was "intended to confuse or deceive."  While willfulness—the intent to confuse or deceive—is not a prerequisite to receive an accounting of profits, *see Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 349 (5th Cir. 2002), it remains an important consideration in awarding profits, *see, e.g.*, *Choice Hotels*, 940 F. Supp. 2d at 544-45 ("Additionally, the mere inclusion of the Comfort name on credit card receipts and the Wi-Fi connection website is not the type of willful and egregious conduct for which courts within this circuit have previously awarded profits."); *see also Quick Techs.*, 313 F.3d 338 ("It is obvious from our cases that willful infringement is an important factor which must be considered when determining whether an accounting of profits is appropriate."). There is no evidence that Defendants used the Rebels Marks with the intent to confuse or deceive customers into believing Rebels Austin was affiliated with Rebels Houston.  Rather, Truesdell appears to have used the Marks under a claim that he had an independent right to do so because he had been involved in the Marks' development.  While that claim of right does not absolve Defendants of trademark infringement, it does weigh in their favor in the decision on whether to award damages.

There is also no persuasive evidence that Plaintiffs' sales have been diverted

from Rebels Houston to Rebels Austin.[35]  These two Rebels clubs' locations are in two different major Texas cities, approximately 150 miles apart.[36]  There is insufficient evidence in the record to support this claim for damages.

The third factor in a damages analysis—the adequacy of other remedies—is neutral.  The Court has ordered cancellation of Truesdell's registration of the Rebels Marks but has declined Plaintiffs' request for a permanent injunction.[37]  The Court's conclusion denying the injunction, however, is based on the lack of evidence of continuing or the likelihood of future infringement, whereas Plaintiffs' damages request is for *past* infringement.  This factor, therefore, does not weigh significantly in the Court's conclusion regarding damages.

The fourth factor—delay—weighs in Defendants' favor.  Jarrah delayed for two or more years in protesting Defendants' use of the Rebels Marks at Rebels Austin.  The Court credits Applewhite's testimony that Jarrah and he discussed in or about early 2010 that Rebels Austin had opened, and discussed whether Jarrah should copy the Austin club by installing a "mechanical bull" in Rebels Houston.  Jarrah waited nearly three years before filing suit to enjoin Defendants' use of the Rebels

---

[35]     Indeed, as noted, Plaintiffs do not request recovery of their own lost profits.

[36]     The only evidence presented about overlapping customer bases came from a passing comment by Jarrah that college students traveled back and forth between Austin and Houston and may have thought the two bars were related.

[37]     *See supra* Parts II.E.1 and II.E.2.

Marks.  These delays counsel against an award of damages as to Rebels Austin.

The fifth factor—the public interest in making the conduct unprofitable—tips in Plaintiffs favor.  While an award of damages helps deter trademark infringement, there is less of a need for deterrence when the infringement occurs under an alleged, even if unfounded, claim of right in the mark in issue.

The evidence of record is insufficient to weigh in any party's favor on the sixth factor, palming off.  Plaintiffs have presented no evidence of "palming off" or customer confusion with regard to Rebels Austin.  *See Choice Hotels*, 940 F. Supp. 2d at 546 ("But because there is no evidence of 'palming off,' the sixth factor, like the first three, weighs against such relief.").

***Rebels Woodlands.***— In contrast, the Court concludes that Plaintiffs are entitled to damages for Defendants' infringement arising from their operation of Rebels Woodlands.  The Court notes that there is no evidence that Defendants sought to "confuse and deceive" customers about the affiliation between Rebels Woodlands and Rebels Houston.[38]  Truesdell opened Rebels Woodlands, like Rebels Austin, under a claim of right after obtaining registration of the Rebels Marks.  Defendants,

---

[38]     The Court considers Jarrah's testimony regarding Defendants' advertising for Rebels Woodlands as evidence of "palming off"—the sixth factor—and not as evidence of Defendants' intent to confuse or deceive.  While Defendants sought to make use of Rebels Houston's reputation to garner business to Rebels Woodlands, there is no evidence that Defendants' intent was confuse customers, given his claim of right in the Rebels Marks.

in February 2012, had informed Plaintiffs of his registration of the Marks, and Plaintiffs did not initially respond to that letter.  Thus, Defendants appear to have used the Rebels Marks at Rebels Woodlands under the misguided assumption that they held exclusive rights in the Marks, and not to deceive customers as to ownership or affiliation.  This first factor thus tips in Defendants favor.

The second factor—whether sales were diverted—favors Plaintiffs to the extent that it suggests that some damages should be awarded.  Jarrah testified, but only in summary fashion, that sales at Rebels Houston dropped after Rebels Woodlands opened.  Jarrah stated that gross sales at Rebels Houston dropped from $120,000 per month to $80,000 per month, because "people from the Woodlands and Katy went to Rebels Woodlands instead.  There is no evidence of loss of Rebels Houston's *profits*, however.  Plaintiffs' testimony therefore is sufficient to establish that they likely suffered some loss of business but the evidence is grossly insufficient to establish the quantity of damages associated with Rebels Woodlands' operation.[39]

The limited remedies available to Plaintiffs also counsel in favor of a damages award here.  While Plaintiffs are obtaining cancellation of Truesdell's registration of

---

[39]   The testimony is unsupported by any documentary proof or evidence of cause and effect.  There is no specific time frame as to which the losses occurred.  Furthermore, correlation does not equal causation.  That is, Plaintiffs have failed to prove that any claimed drop in sales that may have developed at Rebels Houston in 2012 resulted from the Defendants' use of the Rebels Marks or from the opening of Rebels Woodlands generally, as a opposed to some other, unidentified cause.

the Rebels Marks, no permanent injunction barring Defendants' future use of the Rebels Marks—a traditional equitable remedy in infringement cases—will be issued.

Furthermore, as to the delay factor, there is no evidence that Plaintiffs materially delayed in asserting their rights vis-a-vis Rebels Woodlands.  Rebels Woodlands opened in March 2012; Plaintiffs filed this lawsuit that August.  This five-month delay is not unreasonable.

Finally, the fifth and sixth factors favor an award of damages to Plaintiffs.  Most significantly, Defendants' advertising of Rebels Woodlands, which opened in the same market as Rebels Houston, palmed off Rebels Houston's reputation.  Jarrah testified, and the Court finds, that Rebels Woodlands advertised on a Houston-area radio station with the phrase, "Rebels Honky Tonk, now in the Woodlands."  Defendants thus sought to imply an affiliation between the two Rebels locations.  There is a public interest in avoiding customer confusion and thus making Defendants' conduct (in opening Rebels Woodlands) unprofitable.  Further, the use of the same logo and advertising as a "Rebels Honky Tonk" in the same media market aggravated the likelihood of confusion.

Accordingly, Plaintiffs are entitled to an award of damages.

### b.    Calculation of Damages

Plaintiffs seek an award of damages calculated as Defendants' profits.

Plaintiffs estimate Rebels Woodlands' gross profits from August to December 2012 was approximately $600,000.  Plaintiffs derive these numbers from three sets of documents provided by Defendants: (1) bank records for an account held at JP Morgan Chase Bank, N.A. by 26710 North I45 GP LLC; (2) expenditure sheets that reflect cash, debit, and check payments made by Rebels Woodlands; and (3) state tax filings regarding liquor sales.  During discovery, Defendants only provided Plaintiffs with documents for this limited, five-month period.  Defendants provided no documents detailing Rebels Woodlands' revenues and expenditures between March and July 2012.

Under Section 1117(a), Plaintiffs are only "required to prove [Defendants'] sales"—that is, their *gross* revenues; Defendants bear the burden of proving their costs and deductions.  15 U.S.C. § 1117(a).  Defendants claim all expenses listed on the expenditure sheets and their bank statements comprise their costs and deductions.  Furthermore, in awarding damages in the form of profits, the district court may, in its discretion, "enter judgment for such sum as the court shall find to be just" if it finds that "the amount of recovery based on profits is either inadequate or excessive." *Id.*

The Court independently has assessed the documentary evidence. In calculating Defendants' net profits, the Court examined Rebels Woodlands' bank

statements and expenditure logs.[40]  The bank account's opening balance on August

1, 2012 was $34,870;[41] its ending balance on December 31, 2012 was $14,254.  Thus,

over the course of this five-month period, Rebels Woodlands, *as reflected in the bank*

*statements alone*, lost $20,616.  Extrapolating these numbers to the March through

July 2012 period,[42] these losses amount to $41,232.

The expenditure logs make clear, however, that Rebels Woodlands also

realized revenue in cash, above and beyond what is reflected in the bank account

statements.  For each cash expenditure tallied in the logs, the Court assumes that

Rebels Woodlands' gained an equal amount in revenue.  To the extent that

expenditures were made to a particular person (*e.g.*, Kelly, Daryl, Chris) or for a

particular event (*e.g.*, "Bikini Contest"), the Court finds that those expenditures offset

an equal amount of revenue.

What troubles the Court is expenditures variously labeled as "payouts."

Truesdell testified that expenditures labeled "payouts" reflect tips collected and paid

---

[40]     The Court did not independently examine documents reflecting liquor taxes paid by
Rebels Woodlands.  Plaintiffs did not offer these documents as a basis for the club's
profits.  Furthermore, the club generated revenues aside from liquor sales, and thus
the bank statements and expenditure logs are more complete.

[41]     For the ease of computation, the Court has rounded all decimals to the nearest whole
number.

[42]     Without evidence to the contrary, the Court assumes these numbers were largely
consistent between the two five-month periods.

to bartenders or servers.  The Court credits this testimony only in part.  These entries do not list servers' or others payees' names.  The Court does not credit the testimony of Truesdell that the club did not earn profits.  The Court estimates and finds that one-third of the payouts reflect profits realized by Rebels Woodlands and were payments to its owners, including Truesdell.  Otherwise Truesdell would not have continued to operate the club for ten months.

The payouts listed in Rebels Woodlands' expenditure logs total $102,880.  As noted, the expenditure logs reflect revenues and expenditures from August through December 2012.  Extrapolating these numbers for the March through July 2012 period, the payouts for Rebels Woodlands over the entire 10 months it operated total $205,760.  No evidence was offered by either party regarding what percentage of these payouts reflect payments to the club's owners, rather than cash payments or tips to workers.  As noted, the Court finds that one-third of the payouts were profits taken by Rebels Woodlands' owners, or $68,587.[43]   Rebels Woodlands *net* profits, therefore, equal the revenues not reflected in its bank statements ($68,587) less its losses as shown in its bank statements ($41,232), or $27,355.

The Court holds that the amount of profits calculated, $27,355, given the

---

[43]     The Court finds that one-third is a conservative figure and adopts it in an exercise of caution.

circumstances of this case, is sufficient and awards that sum to Plaintiffs in damages.

### 4.    Attorneys' Fees

Section 1117(a) also allows the court to award reasonable attorneys' fees in "exceptional cases."  15 U.S.C. § 1117(a).  "An exceptional case is one where the violative acts can be characterized as malicious, fraudulent, deliberate, or willful." *Seven-Up Co.*, 86 F.3d at 1390.  The Fifth Circuit has also indicated that a plaintiff must show "a high degree of culpability on the part of the infringer, for example, bad faith or fraud" to qualify as an exceptional case.  *Id.  But see Clearline Techs.*, 948 F. Supp. 2d at 717 ("It is not clear whether the Fifth Circuit has itself adopted such a requirement.").  The burden is on the prevailing party to demonstrate that this is an exceptional case.  *Id*.  Plaintiffs here request $22,500 in fees.

This case is not exceptional, and thus Plaintiffs are not entitled to attorneys' fees.  Though Defendants infringed on Plaintiffs' Marks, the evidence reflects that Defendants believed, in good faith, that they had a right to use the Marks in opening Rebels Austin and Rebels Woodlands.  None of the witnesses (including Jarrah) have testified otherwise.  Moreover, Plaintiffs have failed to prove any damages as a result of Defendants' infringing conduct.  Because the evidence of record does not suggest that Defendants' actions were "malicious, fraudulent, deliberate, or willful," the Court will not award Plaintiffs any attorneys' fees.  *See, e.g.*, *Pebble Beach Co.*, 155 F.3d

at 555-56 ("[T]he district court did not clearly err in finding a lack of the requisite level of culpability because there was no intent on Tour 18's part to divert sales, there were no actual damages proven, there was no lack of good faith . . . and there were available legitimate uses of the Plaintiffs' marks to identify the Plaintiffs' products."); *Clearline Techs.*, 948 F. Supp. 2d at 718-19 ("[T]he Court does not find that Cooper infringed willfully by a clear and convincing standard . . . Cooper may well have copied Clearline's trade dress because it, in good faith, believed there was nothing protectable about it.").

## III.    <u>CONCLUSION AND ORDER</u>

Defendants infringed on and diluted Plaintiff's Marks.  Plaintiffs are entitled to cancellation of Truesdell's registration of the Rebels Marks.  Plaintiffs are not, however, entitled to a permanent injunction barring Defendants' future use of the Marks, as Defendants do not continue to use the Marks nor is it reasonably likely that they will use the Marks in the future.  Furthermore, Plaintiffs have not shown that they are entitled to receive damages in the amount of Rebels Austin's profits, but have shown entitlement to damages for Defendants' profits from Rebels Woodlands, in the sum of $27,355.  Finally, this case is not "exceptional," and thus Plaintiffs are not entitled to attorneys' fees.

For the foregoing reasons, it is hereby

**ORDERED** that Defendants are liable on Plaintiffs' claim of trademark infringement.  It is further

**ORDERED** that Defendants are not liable on Plaintiffs' claim of trade dress infringement.  It is further

**ORDERED** that Defendants are liable on Plaintiffs claim of trademark dilution.  It is further

**ORDERED** that Federal Registration No. 3,940,282 is **CANCELLED**.  The Clerk of Court is directed to provide a certified copy of the judgment issued pursuant to this ruling to the Director of the U.S. Patent and Trademark Office for appropriate cancellation of the registration number.  It is further

**ORDERED** that Plaintiffs request for a permanent injunction is **DENIED**.  It is further

**ORDERED** that Plaintiffs shall recover damages from the Defendants, jointly and severally, in the amount of $27,355.  It is further

**ORDERED** that Plaintiffs are awarded post-judgment interest on the amount awarded herein at an annual rate of 0.12% from the date of this Judgment until paid. It is further

**ORDERED** that Plaintiffs' request for attorneys' fees is **DENIED**.

The Court will separately issue a final judgment.

SIGNED at Houston, Texas, this 28th day of **February, 2014**.

Nancy F. Atlas
United States District Judge